[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-14361
_____

D.C. Docket No. 5:12-cv-00468-MTT

JANE DOE,
I, Individually and as Next Friend of,
JANE DOE,
II, a minor,

Plaintiffs - Appellants,

versus

BIBB COUNTY SCHOOL DISTRICT,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Middle District of Georgia
_____

(May 22, 2017)

Before MARTIN and JORDAN, Circuit Judges, and VINSON, [*] District Judge.

PER CURIAM:

Jane Doe II, a special education student, was the victim of a gang-rape at Northeast High School, which was operated by the Bibb County School District. She and her mother, Jane Doe I, sued the School District under Title IX, 20 U.S.C. § 1681(a), alleging that her rights were violated before and after the attack. The district court granted summary judgment in favor of the School District, and the Does now appeal. Following oral argument and a review of the record, we affirm.

## I

On January 19, 2012, Jane Doe II, a special education student attending Northeast High School in Bibb County, Georgia, was under the supervision of teacher Oslynn Brown when a male student came to the classroom and informed Ms. Brown that another teacher had sent for Jane Doe II. Making no effort to verify the request, Ms. Brown released Jane Doe II to the student. That student then brought Jane Doe II to a school bathroom, where she was gang-raped and sodomized by seven male students. No one involved in the attack had a history of sexual violence or harassment at Northeast High School.

---

[*] The Honorable C. Roger Vinson, United States District Judge for the Northern District of Florida, sitting by designation.

The Campus Police Department began investigating the attack. CPD Detective Corey Goble met with the Does and obtained an evidence kit from Jane Doe II's medical examination. He informed CPD Chief Stephanie Prater that he believed there was probable cause for arrest, and five of the suspected perpetrators were arrested prior to the beginning of class that next Monday. Less than one week after the attack, all seven male students suspected of being involved had been arrested.

Following the arrests, school board members discussed the propriety of the CPD—rather than the Macon County Police Department—handling the investigation. One school board member sent an email to the superintendent criticizing the decision to have the CPD investigate the incident. She voiced concerns about transparency and the possibility of lawsuits if something went wrong. She specifically referenced the 2008 rape of a special education student at Northeast High School, and noted that the case had recently settled. The investigation about Jane Doe II's sexual assault was turned over to the MPD on January 31, 2012.[1]

Jane Doe II did not return to Northeast High School following the attack. The School District offered crisis support services and provided individualized

---

[1] Following the transfer of the investigation, the School District initiated disciplinary charges against CPD Chief Prater for violating District rules. The charges against Chief Prater were not pursued or sustained and there was no further discipline against Chief Prater beyond an initial 30-day suspension with pay.

home-based schooling to Jane Doe II for the remainder of the school year. She continued to receive individualized lessons through the summer and, at her request, the School District paid for her to attend a private school during the 2012–2013 school year. She had no further contact with her attackers.

While Jane Doe II was receiving home schooling, the MPD continued its investigation of the attack. On February 10, 2012, the School District learned that Jane Doe II had recanted when she was interviewed by two male MPD officers, and that as a result the charges against the male students had been dropped. Once the school officials received news of the recantation and the subsequent dismissal of charges, they initiated disciplinary proceedings against the male students. The students were given the option to either contest the charges at a disciplinary hearing or forego the hearing and accept disciplinary placement at an alternative school for the remainder of the 2011–2012 school year. None of the attackers returned to Northeast High School during that school year, and three of the seven never returned after they were removed from the school.

After the recantation, school officials prepared a disciplinary charge letter for Jane Doe II alleging she had engaged in sexual misconduct. Because of her disability, however, she was referred to a different committee to determine whether her alleged misconduct was caused, or substantially influenced, by her disability. That committee ultimately determined that the conduct was a manifestation of

4

Jane Doe II's disability, and disciplinary action was not pursued. None of the services provided to Jane Doe II following the attack were discontinued after her recantation.

As a result of the attack, the School District's Title IX coordinator brought in an outside agency to evaluate the safety of the District's schools. The school board also reviewed its policies concerning sexual harassment and safety, and this review resulted in a new safety directive. Students were no longer allowed to check out or escort other students from class; training was provided for principals and directors; an additional police officer was assigned to Northeast High School; locks were installed on the restroom doors in the area where the attack occurred; and teacher supervision was required for restroom breaks.

In November of 2012, Jane Doe I and Jane Doe II filed this suit, alleging that Jane Doe II's Title IX rights were violated both before and after her attack. The School District moved for summary judgment on both claims, arguing that the Does could not demonstrate that the School District had sufficient knowledge about sexual harassment in its schools to support their "before" claim, and that it was not deliberately indifferent in its handling of the attack. The district court granted summary judgment in favor of the School District on both claims, concluding that (1) there was no genuine issue of fact as to the School District's lack of actual notice on the "before" theory of liability; and (2) as to the "after"

claim, no reasonable jury could find the School District was deliberately indifferent within the meaning of Title IX, and, even if it was, there was no genuine dispute of material fact that the School District had not subjected Jane Doe II to further discrimination.

## II

We review the grant of summary judgment *de novo*, applying the same legal standard used by the district court and drawing all factual inferences in the light most favorable to the nonmoving parties. *See Johnson v. Bd. of Regents*, 263 F.3d 1234, 1242–43 (11th Cir. 2001). Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits . . . show that there is no genuine issue as to any material fact and that the nonmoving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In order to overcome a motion for summary judgment, the nonmoving party must present more than a mere scintilla of evidence supporting her position, and must make a sufficient showing that a jury could reasonably find in her favor. *See Brooks v. Cty. Comm'n of Jefferson Cty., Ala.*, 446 F.3d 1160, 1162 (11th Cir. 2006).

## III

Title IX provides that "[n]o person . . . shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination

6

under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). "Although Title IX does not expressly permit private enforcement suits, the Supreme Court has found an implied private right of action for individuals to enforce the mandates of Title IX." *Williams v. Bd. of Regents of Univ. Sys. of Georgia*, 477 F.3d 1282, 1293 (11th Cir. 2007). Title IX also permits private individuals to recover money damages. *See id.*

Under certain circumstances, a plaintiff may recover under Title IX for student-on-student harassment. For such claims, the plaintiff must establish four elements: (1) the defendant is a Title IX funding recipient; (2) an "appropriate person" had actual knowledge of the discrimination or harassment the plaintiff alleges occurred; (3) the funding recipient acted with deliberate indifference to known acts of harassment in its programs or activities; and (4) the discrimination is "so severe, pervasive, and objectively offensive that it effectively bars the victim's access to an educational opportunity or benefit." *Id.* (quoting *Davis v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 633 (1999)). "An 'appropriate person' . . . is, at a minimum, an official of the recipient entity with authority to take corrective action to end the discrimination." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998).

The Does argue that the district court erred by concluding that they had failed to set forth sufficient evidence to create a genuine issue of material fact

regarding their claims alleging deliberate indifference both before and after the attack. We address each claim in turn.

## A

In support of their argument that the School District had actual notice before the assault, the Does offer evidence of two sexual assaults that occurred within the School District in 2002 and 2008. Both involved alleged perpetrators and victims different than the ones in this case.

The first incident occurred in 2002 at Westside High School. A female student agreed to stay after school and have sex with a male student. When the female student went to meet the male student in the restroom, she was sexually assaulted by at least three other male students. Following the incident, locks were placed on the bathroom doors at Westside, and the doors remained locked during and between classes. Students were able to access the bathroom with a key obtained from a teacher.

The second incident occurred in 2008 at Northeast High School. T.B., a special education student, was raped. On the morning of the attack, a teacher unlocked the Practical Assessment Exploration Skills lab, as she had done every morning because she thought it was school policy. On the afternoon of the assault, another teacher who was in charge of T.B. failed to arrange for supervision of her

class while she conducted planning meetings. That teacher sent her class into the PAES lab where, without adult supervision, T.B. was raped.

School officials determined that the teacher who left her class unsupervised in the PAES lab violated school policy. That teacher resigned, but was eventually reinstated.

As a result of the incident, Northeast High School began to require teachers to monitor the hallways for the first 15 to 20 minutes of their planning periods, added additional campus police officers, and ordered additional radios for better communication between police and faculty. The Does do not dispute that these remedies were put in place, but contend that these measures are immaterial because there was no evidence introduced to prove that they were still in effect at the time of her attack in 2012.

The Supreme Court has emphasized that holding a school district liable for the actions of others without actual notice to a responsible official would frustrate the purposes of Title IX. *See Gebser*, 524 U.S. at 285. We have held that this requirement, however, does not demand notice of prior harassment of the plaintiff herself. *See Doe v. Sch. Bd. of Broward Cty., Fla.*, 604 F.3d 1248, 1257 (11th Cir. 2010); *Williams*, 477 F.3d at 1292–95. Our sister circuits have also indicated that Title IX does not require that the prior harassment be committed by the same perpetrator. *See, e.g.*, *Simpson v. Univ. of Colorado Boulder*, 500 F.3d 1170 (10th

Cir. 2007). Given these trends in Title IX case law, we do not foreclose the possibility that a plaintiff may demonstrate adequate notice based upon similar prior incidents that involve different victims and perpetrators. We do, however, require that "the substance of [the] actual notice . . . be sufficient to alert the school official of the possibility of the Title IX plaintiff's harassment." *Sch. Bd. of Broward Cty*, 604 F.3d at 1254. The Does have failed to demonstrate that here.

Although the similarities in T.B.'s and Jane Doe II's disabilities and participation in the special education program at Northeast High School make this a close case, we ultimately agree with the district court's conclusion that the circumstances surrounding T.B.'s attack are not sufficiently similar to those in Jane Doe II's attack so as to provide actual notice to the School District. Although both assaults involved the sexual attack and violation of a special education student and a severe lapse in judgment and lack of supervision by a teacher, the attack of a special education student left unattended with others in an unlocked classroom is not sufficient to alert the School District of the possibility of Jane Doe II's attack, which occurred after she was checked out of her classroom by a male student with no verification of his story.

For similar reasons, the 2002 incident at Westside High School did not provide notice to the School District. That incident, which involved the after-school sexual assault of a female student who was not a participant in the

special education program, is not sufficiently similar to alert the School District of the possibility of an attack against a special education student during school hours.[2]

The Does encourage us to look to the Tenth Circuit's decision in *Simpson* for guidance. In that case, female students at the University of Colorado ("CU") alleged that they were sexually assaulted at a party attended by CU football players and recruits. The Tenth Circuit noted that the alleged assaults were "not simply misconduct that happened to occur at CU among its students"—rather, the plaintiffs had alleged "that the assaults arose out of an official school program, the recruitment of high-school athletes[,]" and "were the natural, perhaps inevitable, consequence of an officially sanctioned but unsupervised effort to show recruits a 'good time.'" *Simpson*, 500 F.3d at 1174–75. It concluded that the evidence submitted could support a finding that the risk of such an assault during recruiting visits was obvious. *See id.* at 1180–81.[3]

---

[2] We also agree with the district court's conclusion that the additional incidents of sexual assault set forth in Mason Bryant's affidavit do not create a genuine issue of fact. The record is devoid of information about the circumstances surrounding these assaults and whether they are similar to the attack on Jane Doe II.

[3] That evidence included various articles connecting the risk of sexual misconduct and college athletes and recruiting, and one article reporting a number of sexual assault cases by CU players; a 1990 rape and sexual assault charge against two CU football players; a female high school student's allegations of sexual assault by a CU football recruit in 1997; a 1998 meeting between CU officials and the district attorney's office, in which CU officials were informed that the 1997 assault was not isolated and indicated a serious problem; the 1990 or 2000 reports of sexual harassment by a female player on the CU football team and the 2001 rape of a female trainer by a CU football player, both of which were mishandled by the head coach; and the head coach's

Here, in contrast, there is nothing in the record to suggest that the School District took any steps to condone or encourage sexual assault or harassment on campus. And there is no similar lack of control over discrete groups of students known—or even encouraged—to engage in sexual misconduct.[4]

On the record before us, and viewing the facts in the light most favorable to the Does, we cannot conclude that a reasonable jury would find that the 2002 and 2008 incidents would alert a responsible school official to the possibility of Jane Doe II's future assault. We therefore affirm the district court's grant of summary judgment in favor of the School District as to the Does' claim of deliberate indifference before the attack.[5]

**B**

With regard to their "after" claim, the Does argue that (1) the School District's response after the attack was deliberately indifferent because the diversion of the investigation to the MPD was clearly unreasonable and violated

---

hiring of a former football player who had been accused of sexual assault a few years earlier and had been banned from the CU campus.

[4] To the extent the Does rely upon our decision in *Williams* to argue that a jury could reasonably determine that the School District had actual notice, that case is distinguishable. In *Williams*, we concluded that a student's allegations of gang rape by University of Georgia basketball players survived a motion to dismiss based on several school officials' alleged knowledge of one player's past history of harassing behavior. *See* 477 F.3d at 1294–95. The *Williams* case, unlike this one, involved notice of prior behavior by the same perpetrator of the alleged assault.

[5] Because the Does have failed to create a genuine issue of material fact regarding the element of actual knowledge, we do not address whether the district court properly declined to consider the affidavits of Dr. Jimmy Stokes and Dr. Emily Collins, which described what steps other schools and school districts have taken to prevent sexual assaults on their campuses, as this evidence speaks more to the issue of deliberate indifference than to actual knowledge.

the School District's obligation to conduct a full and impartial investigation, and (2) Jane Doe II was denied an educational opportunity or benefit as a result of the School District's response following the attack, particularly through its issuance of a misconduct charge against her.

A funding recipient is deliberately indifferent "only where [its] response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Davis*, 526 U.S. at 648. We may, on a motion for summary judgment, determine that a response was not "clearly unreasonable" as a matter of law. *Id.* at 649. On the record before us, we agree with the district court that the School District's actions following the assault were not clearly unreasonable.

Both parties agree that the original investigation conducted by the CPD was adequate and thorough. The Does argue, however, that the School District's transfer of the investigation to the MPD was intended to "subvert" its own investigation, with the School District affirmatively seeking, and receiving, from the MPD a conclusion contrary to that of the CPD. There is no evidence, however, that the School District sought a different result or that it reasonably believed the MPD's investigation would provide a different conclusion. To the extent the Does argue that the School District's disciplinary action against CPD Chief Prater was a pretextual attempt to discredit its own investigators, they have not presented any evidence that the discipline was related to the results of the CPD's investigation.

13

Moreover, the email from a school board member suggesting that were was a political reason for turning the investigation over to the MPD does not create a jury question on the issue of deliberate indifference. That the School District might express concerns about the public's perception of an internal investigation is not, by itself, clearly unreasonable.

To the extent the Does argue that the charge letter sent to Jane Doe II following her recantation to the MPD constitutes deliberate indifference, we again agree with the district court's determination that it does not. The record reflects that Jane Doe II was not singled out, because the School District also immediately issued charge letters to the male students involved and prevented them from returning to school. And, importantly, Jane Doe II was not actually subjected to discipline by the School District. As the district court noted, although the immediate issuance of the charge letter to Jane Doe II may not have been the best response, the record reflects that none of her educational benefits changed or ended because her alleged misconduct was deemed a manifestation of her disability.

Under these circumstances, no reasonable jury could find that the School District's response to Jane Doe II's assault was clearly unreasonable. Because we hold that the Does have not sufficiently established deliberate indifference after the assault, we do not reach the issue of whether Jane Doe II was denied access to an educational opportunity or benefit.

14

## IV

This is a tragic case, and we cannot imagine the horror that Jane Doe II suffered. But the Does have not sufficiently established that the School District had actual notice before the attack or that it acted with deliberate indifference after the attack so as to create a jury question on their Title IX claims. The district court's entry of summary judgment in favor of the School District is therefore affirmed.

**AFFIRMED.**

MARTIN, Circuit Judge, concurring:

Jane Doe II suffered horrifying sexual abuse at the hands of seven of her male classmates in the middle of the school day at her high school. She was sixteen years old at the time, but her intellectual disabilities placed her functioning at the level of a nine year old. In the aftermath of the assault, Ms. Doe's school told her the attack was a "manifestation" of her own intellectual disability. Under these circumstances, one would think Ms. Doe would have a legal remedy against the School District for the assault, as well as for its response. But this case demonstrates how hard it is to meet the standard for relief under Title IX in cases of student-on-student sexual assault. See Williams v. Bd. of Regents of Univ. Sys. of Ga., 477 F.3d 1282, 1293 (11th Cir. 2007) (describing the four elements "[a] plaintiff seeking recovery for a violation of Title IX based on student-on-student harassment must prove" and stating that liability is limited to "certain narrow circumstances"); Hill v. Cundiff, 797 F.3d 948, 968 (11th Cir. 2015) ("The standard for student-on-student sexual harassment claims is far more rigorous than a claim for teacher-on-student harassment."). The Majority arrives at the correct conclusion that Ms. Doe's case does not clear the high bar for bringing Title IX student-on-student harassment claims. However, I arrive at the same result as the Majority by a different path, which I will set out here.

16

Immediately after Ms. Doe was assaulted, the School District responded just as it should have. Within a week of the rape, the District's own police force had interviewed Ms. Doe several times, using specialists trained in interviewing child victims of sexual assault. It had collected forensic evidence and reviewed surveillance footage. It determined Ms. Doe had been sexually assaulted and placed most of the perpetrators under arrest. But then the School Board and other District officials began to worry about possible legal liability and potential harm to the District's public image. As a result, the District ordered its own police department to stand down and turned the investigation over to the local police. This decision was made by the District Superintendent, over the opposition of the School District's Chief of Police. No one says the District made this decision because it was in Ms. Doe's best interest. Rather, this change in approach came because it was best for the District's public relations.

Once the District handed over the investigation to the Macon Police Department, it relinquished all responsibility for investigating what happened to Ms. Doe and simply signed on to the results of the Macon Police Department's investigation. The Macon police conducted an interrogation of Ms. Doe in a manner likely to overpower her. While Ms. Doe was alone with two male police officers and neither of her parents present, she was said to have recanted her statements about the horrible attack she had earlier described. Then, just hours

after the Macon police told the District that Ms. Doe had recanted, the District charged her with sexual misconduct.  Never mind that this charge was wholly inconsistent with the conclusion of the District's own investigation.  The District suspended Ms. Doe from school and even recommended she be expelled.  Also, as part of its disciplinary proceedings against Ms. Doe, the District found that her intellectual disability was partially to blame for the circumstances of her rape.

I part ways with my colleagues because I believe a reasonable jury could see this course of action as a "clearly unreasonable" response to Ms. Doe's sexual assault.  Williams, 477 F.3d at 1295.  Certainly if I were a juror, I would be so inclined.  I had hoped we were long past the day where victims of sexual assault could find themselves charged with disciplinary violations on account of having been raped.  It is true the District eventually dropped the charge against Ms. Doe and decided not to punish her for her "sexual misconduct."  But that was only because the District found that Ms. Doe's intellectual disability contributed to the assault—a finding which, in its own way, allocates fault to Ms. Doe for what happened to her.

I do not suggest there is anything wrong with school officials turning a campus sexual assault investigation over to an independent law enforcement agency.  It may even be a preferable course of action in some circumstances.  But at the same time, turning a sexual-assault investigation over to local law

enforcement does not necessarily shield school officials from Title IX liability. Cf. id. at 1296. In Ms. Doe's case, the District diverted the investigation to the Macon police only after the District's own careful criminal investigation already concluded that Ms. Doe had been forcibly raped. Then once the Macon police said Ms. Doe recanted, the District set out to expel her with no effort to evaluate the police department's report in light of the evidence that caused the District's own police to conclude that Ms. Doe was the victim of rape. On this record, a jury could find the District's actions "clearly unreasonable." Id. at 1295. Therefore, I believe there is a triable issue of fact about whether the District was "clearly unreasonable" in responding to the sexual assault of Ms. Doe.

But as I've said, this case illustrates the difficulty students like Ms. Doe have in prevailing in a Title IX student-on-student harassment suit. Even if she shows that the District was "clearly unreasonable" in its response, this is still not enough. Ms. Doe must also show that the unreasonable response led to "further discrimination" that was "so severe, pervasive, and objectively offensive" that it "den[ied] [her] equal access to an education." Hill, 797 F.3d at 968–73; see also Davis v. Monroe Cty. Bd. of Educ., 526 U.S. 629, 650, 119 S. Ct. 1661, 1675 (1999). This record does not reflect that Ms. Doe suffered this type of discrimination. Ms. Doe's mother made the understandable decision that her daughter would not return to school, and she made this decision even before the

19

District turned the investigation over to the Macon Police Department. Therefore, Ms. Doe cannot show that the school's unreasonable response to the assault (relying on the Macon Police Department's conclusion even though it conflicted with the District's own) was what motivated her mother to withdraw her from school. And too, the District did respond appropriately to Ms. Doe's educational needs. It immediately provided Ms. Doe with home-based educational services. Then when her mother was ready for her to return to a classroom setting, the District paid for her to finish high school at a small private school. Further, because the District ultimately decided not to take disciplinary action against Ms. Doe, the earlier disciplinary charge did not adversely affect her educational opportunities. Indeed, Ms. Doe's mother has acknowledged that the District provided every educational service she wanted for her daughter.

On this record, I agree with the Majority that no reasonable jury could find that the District deprived Ms. Doe of equal access to an education. I therefore concur in the decision to affirm the District Court.

20